No. 25-7516

IN THE

# United States Court of Appeals for the Ninth Circuit

KALSHIEX, LLC,

*Plaintiff-Appellant,*

v.

KIRK D. HENDRICK, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:25-cv-575 (Gordon, C.J.)

**KALSHIEX LLC'S REPLY IN SUPPORT OF ITS CIRCUIT RULE 27-3 EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY [RELIEF NEEDED BY FEBRUARY 16, 2026]**

GRANT R. MAINLAND
ANDREW L. PORTER
DAVIS CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

DENNIS L. KENNEDY
PAUL C. WILLIAMS
BAILEY ❖ KENNEDY
8984 Spanish Ridge Ave.
Las Vegas, NV 89148

NEAL KUMAR KATYAL
JOSHUA B. STERLING
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7505
nkatyal@milbank.com

February 13, 2026

*Counsel for Plaintiff-Appellant
KalshiEX LLC*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT........................................................................................ 2

I.     AN ADMINISTRATIVE STAY WOULD MAINTAIN THE
STATUS QUO ........................................................................ 2

II.    DEFENDANTS' REPUDIATION OF THE NON-ENFORCEMENT
AGREEMENT FURTHER SUPPORTS GRANTING AN
ADMINISTRATIVE STAY........................................................ 6

III.   THE BALANCE OF HARMS FAVORS GRANTING AN
ADMINISTRATIVE STAY........................................................ 9

CONCLUSION...................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

CASES:

*Al Otro Lado v. Wolf,*
    945 F.3d 1223 (9th Cir. 2019)...............................................................................2

*Am. Agric. Movement Inc. v. Bd. of Trade of Chi.,*
    977 F.2d 1147 (7th Cir. 1992)..........................................................................1, 2, 5

*Branch Banking & Tr. Co. v. D.M.S.I., LLC,*
    871 F.3d 751 (9th Cir. 2017)................................................................................7

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,*
    82 F.4th 664 (9th Cir. 2023)........................................................................4, 5, 6

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana,*
    98 F.4th 1180 (9th Cir. 2024)...............................................................................4

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000).............................................................................4

*Heckler v. Comm. Health Serv. of Crawford Cnty., Inc.,*
    467 U.S. 51 (1984)................................................................................................7

*Hubbard v. City of San Diego,*
    139 F.4th 843 (9th Cir. 2025)...........................................................................4, 5

*Leist v. Simplot,*
    638 F.2d 283 (2d Cir. 1980)..............................................................................4, 5

*MicroStrategy, Inc. v. Business Objects, S.A.,*
    661 F. Supp. 2d 548 (E.D. Va. 2009)..................................................................3

*Nat'l Inst. of Health v. Am. Pub. Health Ass'n,*
    145 S.Ct. 2658 (2025).......................................................................................10

*Nken v. Holder,*
    556 U.S. 418 (2009)..............................................................................................3

# TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*Oliver v. Bd. of Regents of Univ. System of Ga.*,
No. 3:06-cv-110, 2008 WL 2302686
(M.D. Ga. May 30, 2008) ........................................................................ 3

*Paine, Webber, Jackson & Curtis, Inc. v. Conaway*,
515 F. Supp. 202 (N.D. Ala. 1981) .......................................................... 5

*Rasmussen v. Thomson & McKinnon Auchincloss Kohlmeyer, Inc.*,
608 F.2d 175 (5th Cir. 1979) .................................................................... 5

*Sicor, Inc. v. Sacks*,
266 P.3d 618 (Nev. 2011) ................................................................... 11, 12

*United States v. Texas*,
144 S. Ct. 797 (2024) ............................................................................... 6

**S**TATUTE**:**

Nev. Rev. Stat. § 463.0193 ........................................................................ 11

**R**EGULATIONS**:**

17 C.F.R. § 38.151(b) ................................................................................ 12

17 C.F.R. § 38.250 .................................................................................... 13

17 C.F.R. § 40.11 ...................................................................................... 12

**O**THER **A**UTHORITY**:**

*Highest temperature in San Francisco today?*, Kalshi,
https://perma.cc/458F-XL9C ................................................................. 11

iv

## INTRODUCTION

Defendants' Opposition makes clear that they simply regret their non-enforcement agreement with Kalshi. Defendants agreed not to enforce pending Kalshi's motion to stay; that motion was referred to the merits panel; and Defendants are evidently frustrated by the fact that the merits panel has not ruled. In response, they have filed not one, but two intemperate "status reports" asking the merits panel to "immediately deny" Kalshi's motion to stay and threatening to sue Kalshi in state court if the merits panel does not rule by next Tuesday. This unprofessional conduct should not be rewarded.

The Opposition seeks to obscure Defendants' about-face by claiming that Kalshi's conduct justifies it. But Kalshi has done nothing more than operate its business in the ordinary course, which Defendants fully understood would occur as a result of the non-enforcement agreement. That Kalshi continues to advertise and offer new event contracts, and has experienced growth in its business, should come as no surprise. It certainly does not excuse tearing up their commitment.

Absent an administrative stay, Kalshi faces imminent and irreparable harm, most notably in the form of a looming *ex parte* TRO that Kalshi will not have a meaningful opportunity to oppose, and that will force Kalshi to immediately suspend its entire business in Nevada. Defendants' threatened

action invites the "total chaos" that Congress warned against in displacing state regulation of derivatives exchanges such as Kalshi. *Am. Agric. Movement Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992). And it would short-circuit this Court's—and two other Circuits'—consideration of what the district court below acknowledged are "serious questions on the merits." 1-ER-25. The Court should grant an administrative stay.

## ARGUMENT

### I.   AN ADMINISTRATIVE STAY WOULD MAINTAIN THE STATUS QUO.

Kalshi easily meets the standard for an administrative stay, which would preserve the "status quo" that existed before the district court dissolved the PI, and prevent Kalshi from suffering severe irreparable harm before the Court resolves Kalshi's motion for a stay pending appeal. *See Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). Defendants argue that Kalshi seeks an injunction that would *alter* rather than *preserve* the status quo. Defendants are wrong.

The relevant state of affairs to be preserved is what existed before the district court issued the dissolution order that is the subject of Kalshi's merits appeal. Under that state of affairs, Kalshi was free to operate in Nevada, and Defendants were enjoined from enforcing Nevada law against Kalshi. As the district court stated in originally granting that injunction, "the status quo …

2

is that these contracts are legal under federal law." 2-ER-80. And it is that status quo that Defendants below sought to "alter[ ]" by seeking to dissolve the PI. *Nken v. Holder*, 556 U.S. 418, 429 (2009) (citation omitted); *see MicroStrategy, Inc. v. Business Objects, S.A.*, 661 F. Supp. 2d 548, 562 (E.D. Va. 2009) (staying dissolution of PI to "maintain[ ] the status quo" that predated the dissolution); *Oliver v. Bd. of Regents of Univ. System of Ga.*, No. 3:06-cv-110, 2008 WL 2302686, at *11-12 (M.D. Ga. May 30, 2008) (similar). The purpose of the administrative stay is to temporarily stay the effectiveness of the dissolution order while the Court decides whether to grant a full stay pending appeal.

Defendants suggest (at 13) that Kalshi cannot obtain an administrative stay because Kalshi seeks relief "for the duration of the appeal." Not so: The Motion asks for an administrative stay "pending resolution of Kalshi's stay motion"—*i.e.*, while that motion is *sub judice* by the merits panel. And Defendants' argument (at 14) that granting an administrative stay would "disrupt the status quo" lacks merit for multiple other reasons.

*First*, Defendants' cases (at 14-16) stating that the status quo is the "last uncontested status which preceded the pending controversy" are inapposite. None of them involved a situation where a PI was granted, the defendant declined to exercise its right to appeal, and the defendant later sought

dissolution of the PI. So none of them supports Defendants' suggestion that this Court should simply ignore that, for months, Kalshi operated under a PI that shielded it from state enforcement. In fact, in all four cases Defendants cite, this Court *upheld* grants of relief over objections that doing so altered the status quo. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024) (PI "preserved the status quo"); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (similar); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (similar); *Hubbard v. City of San Diego*, 139 F.4th 843, 853-854 (9th Cir. 2025) (similar).

*Second*, Defendants' position—not Kalshi's—"would lead to absurd situations." *GoTo.com*, 202 F.3d at 1210. It would let Defendants unilaterally decide what the status quo is and would mean that plaintiffs could never obtain an administrative stay to prevent a state from initiating a preempted enforcement action. *Cf. id.* (rejecting similar argument in trademark case because it would mean "plaintiffs could never bring suit once infringing conduct had begun").

*Third*, an administrative stay is appropriate even if the status quo is the state of affairs before Kalshi brought this pre-enforcement suit. It has been settled for decades that the CEA "preempts the application of state law."

4

*Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980). Thus, the status quo is the 50-plus years for which the CFTC has been the sole regulator of DCMs. It is Defendants who upset that status quo by suddenly trying to regulate DCMs themselves.

Defendants are wrong to call (at 16) Kalshi's preemption argument "novel and untested." Courts have long recognized the CEA preempts states from applying their laws to "directly affect trading on or the operation of a" DCM. *Am. Agric.*, 977 F.2d at 1156. Gaming law is no exception. *Rasmussen v. Thomson & McKinnon Auchincloss Kohlmeyer, Inc.*, 608 F.2d 175, 178 (5th Cir. 1979) (CEA preempted state-law "commercial gambling" charge); *Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F. Supp. 202, 207 (N.D. Ala. 1981) (recognizing "preemption of state gambling laws" under the CEA).

If anything, Defendants' cases only demonstrate that states upset the status quo when they assert invalid regulatory jurisdiction. For example, in *Hubbard*, the City of San Diego had passed a new ordinance regulating yoga lessons in public places. 139 F.4th at 853 n.10. This Court held the "status quo" was the situation *before* the ordinance was passed. *Id.* Likewise, where a school district adopted a "new policy of enforcing its non-discrimination rules" with respect to student organizations, that "alter[ed] the status quo."

*Fellowship of Christian Athletes*, 82 F.4th at 685.  So too, here:  Defendants altered the status quo through their unprecedented assertion of jurisdiction over a CFTC-registered derivatives exchange.  Accordingly, when the district court issued the PI initially, it did so to "preserve the status quo, which is that these contracts are legal under federal law."  2-ER-80.

If there is any uncertainty as to which state of affairs counts as the status quo, the Court should grant an administrative stay to minimize immediate irreparable harm to Kalshi.  The "status quo" in any given case is not always "self-evident."  *United States v. Texas*, 144 S. Ct. 797, 799 n.2 (2024) (Barrett, J., concurring).  In deciding whether to grant an administrative stay, courts accordingly should seek "to minimize harm."  *Id.* at 798; *see also* Mot. 20-23; *infra* § III (outlining harms to Kalshi).

## II. DEFENDANTS' REPUDIATION OF THE NON-ENFORCEMENT AGREEMENT FURTHER SUPPORTS GRANTING AN ADMINISTRATIVE STAY.

Defendants admit (at 7) they "agreed not to bring a state enforcement proceeding against Kalshi while the [stay] motion was pending."  They do not contest that a regulator may not simply repudiate a non-enforcement agreement, as Kalshi's cases demonstrate.  Mot. 11-12.  They attempt (at 19) to distinguish those cases on the basis that they gave notice before enforcing.

6

But Defendants' announcement of their intention to violate their agreement does not excuse the violation.

Defendants also argue (at 17) the agreement did not mean anything because there was no "consideration." This Court should reject any suggestion that the government need not honor a written agreement of non-enforcement because there was purportedly "no consideration." *Heckler v. Comm. Health Serv. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 (1984) (citizens have an "interest ... in some minimum standard of decency, honor, and reliability in their dealings with their Government").

Defendants are also wrong to say there was no consideration. Kalshi agreed not to file an emergency motion in exchange for Defendants' agreement. Ex. A. Kalshi also *relied* on Defendants' agreement by not filing such a motion in December. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 763 (9th Cir. 2017) ("reliance is a substitute for consideration"). Defendants did enter an agreement; they just wish they had not because they are frustrated that the merits panel has not yet ruled. And it cannot be a coincidence that Defendants seek to sue in state court on the same day that the CFTC plans to file an amicus brief in this Court supporting Kalshi's position.

Defendants suggest (at 17-18) that Kalshi's own actions compelled them to violate the agreement, but that is not true, either. Kalshi has never used

7

Defendants' non-enforcement agreement against them. At most, Kalshi has noted that Defendants' failure to appeal *the original PI* entered in April 2025 belied their later contention that "every day" imposed an irreparable harm on the state. Defendants' failure to appeal the PI is obviously different from their temporary non-enforcement agreement. Nor did Kalshi ever say (at 18) "it would not stop operating in Nevada, no matter how this Court rules in this appeal, until State Defendants bring a civil enforcement action in state court." The portion of the record Defendants cite says nothing of the sort; any suggestion that Kalshi would simply ignore this Court's ruling is baseless.

Defendants (at 1) try to justify their repudiation of the non-enforcement agreement by asserting, falsely, that Kalshi has "massively and aggressively expanded its business" while the stay motion has been pending. Defendants complain (at 22) Kalshi "now" offers "prop[s]" and "parlays," but Defendants complained about that well before they agreed to non-enforcement.[1] *See* D. Ct. Dkt. 250 at 2-3. They also knew, in consenting to temporary non-enforcement, that Kalshi would continue to grow its business in the meantime. *Id.*

---

[1] Defendants also falsely suggest (at 21-22) Kalshi immediately began offering these contracts after the PI was issued. In fact, Kalshi began offering them months later.

at 1 (noting that a stay would allow Kalshi to "continue operating and expanding … while it appeals the Court's decision").

And Defendants' specific complaints (at 7-10) about Kalshi's "aggressive" expansion show nothing more than Kalshi conducting its business as a DCM in the ordinary course. Kalshi advertised its Super Bowl contracts, pursued business partnerships, and began offering contracts on new sports leagues, among many other initiatives (sports- and non-sports-related). None of this could possibly have thwarted Defendants' expectations when they agreed to non-enforcement.

Nor is any supposed "asymmetry" a basis for going back on the agreement. Opp. 20. To start, Defendants created the asymmetry themselves by entering the non-enforcement agreement and then seeking *ex parte* TROs against Polymarket and Coinbase. Defendants also cannot demonstrate they must enforce Nevada law equally stringently against everyone, notwithstanding any non-enforcement agreement. Kalshi pointed out that the Nevada statutes Defendants cite for that argument say no such thing. Mot. 16. Defendants have no response.

## III. THE BALANCE OF HARMS FAVORS GRANTING AN ADMINISTRATIVE STAY.

Kalshi has explained why the balance of harms favors granting an administrative stay. Mot. 20-23. Defendants' responses are unavailing.

9

*First*, the district court never found that "Kalshi does not face irreparable harm," as Defendants assert (at 21). In granting the PI, the court found that compliance with Defendants' demands would cost Kalshi "millions of dollars" for which it "could not meaningfully be compensated." 2-ER-79; *see Nat'l Inst. of Health v. Am. Pub. Health Ass'n,* 145 S.Ct. 2658, 2660 (2025) (per curiam) ("loss of money" is "irreparable" where "the funds 'cannot be recouped'"). The court did not reverse that finding when it dissolved the PI. *See* 1-ER-27. Nor did the district court "warn[ ]" Kalshi about relying on its preemption argument, as Defendants suggest (at 21). The court referenced the possibility that *the CFTC* may "take[ ] action against Kalshi's sports contracts." 2-ER-80. The court then granted a PI to "preserve the status quo," 2-ER-80, which Kalshi and its customers relied on for months.

*Second*, an enforcement proceeding *would* cause irreparable harm. Defendants assert (at 22) that Kalshi can "raise any potential defense," but Nevada courts have granted *ex parte* TROs against other companies without letting them be fully heard on preemption. Mot. 14-15. Defendants also disclaim (at 23) intent to block contracts other than those based on sports or elections, but that assurance has little value. Defendants' TROs against Polymarket and Coinbase apply to *all* event contracts—because that is the relief Defendants requested. *See* Ex. D at 13 (Excerpt of Dkt. 1-4, *State of Nevada*

10

*ex rel. Nev. Gaming Control Bd. v. Blockratize*, No. 3:26-cv-89 (D. Nev.)) (requesting "an order prohibiting POLYMARKET … from operating a market that offers event-based contracts relating to sporting *and other events* to people in Nevada" (emphasis added)).  Indeed, under Nevada law, "accepting wagers on sporting events *or other events*" renders a business subject to regulation.  Nev. Rev. Stat. § 463.0193 (emphasis added).  Nevada law accordingly provides no basis for distinguishing "genuine commodity derivatives" from "wagering," as Defendants purport to do (at 23).  Kalshi's contracts based on weather events, for example, are just as vulnerable to an *ex parte* TRO as sports and election contracts.  *See, e.g.*, *Highest temperature in San Francisco today?*, Kalshi.[2]

Defendants also deny (at 22) the harmfulness of enforcement based on a Massachusetts court's PI against Kalshi.  Kalshi has requested a stay of that PI from a Massachusetts appeals court precisely because compliance would cause (and is already causing) irreparable harm.  Setting that aside, the *ex parte* TRO Defendants wish to obtain is even more harmful than the Massachusetts PI.  As Defendants acknowledge (at 22), the Massachusetts court gave Kalshi 30 days to comply, whereas the TROs against Polymarket and Coinbase were effective upon issuance.  Defendants seek to enforce against

---

[2] *Available at* https://perma.cc/458F-XL9C.

Kalshi in just *four days*, and if a TRO issues, Kalshi will be unable to appeal. *Sicor, Inc. v. Sacks*, 266 P.3d 618, 620 (Nev. 2011) (stating a TRO is not appealable under Nevada law).

*Third*, Defendants urge the Court to deny a stay based on their interpretations of CFTC regulations. But it would make no sense to adopt Defendants' contested interpretations before the CFTC (or this Court) can weigh in on these matters. *See* Mot. 9. The CFTC is highly unlikely to agree with Defendants' view (at 21) that 17 C.F.R. § 40.11 prohibits all sports-event contracts—after all, it has knowingly allowed thousands of such contracts to trade on DCMs. The CFTC also can clarify whether DCMs may limit access to U.S. users based on their being located in a given state consistent with their "impartial access" obligation. 17 C.F.R. § 38.151(b).

*Fourth*, Defendants' claimed harms to Nevada and the public are speculative and unsubstantiated.

*No Irreparable Financial Harm*: Defendants claim financial harm but concede they can "disgorge[ ]" Kalshi's profits, meaning any financial harm—unlike Kalshi's—is reparable. Merits Resp. Br. 67.

*No Harm to the "Integrity of Gaming"*: Defendants invoke (at 24) gambling-related scandals. But each of those scandals involved state-regulated sportsbooks—not CFTC-regulated prediction markets. *See* 1-ER-21.

Defendants lack any basis for suggesting that prediction markets are more susceptible to these scandals than sportsbooks.

*No Harm to the Public from "Unregulated Gambling"*:  Kalshi is not unregulated but must comply with myriad stringent requirements under the CEA and CFTC regulations.  The DCM Core Principles therein require Kalshi to prevent "manipulation, price distortion, and disruptions" on its exchange. 17 C.F.R. § 38.250.  Kalshi also employs measures to prevent insider trading, contrary to Defendants' unsubstantiated assertions (at 24).  *See* 3-ER-159-160.  Kalshi has also taken numerous consumer-protection measures to prevent harm to users:  Users may self-exclude from trading, take trading breaks, and set personal funding caps that limit deposits to Kalshi.  2-ER-59. Defendants assert (at 24) that Kalshi allows "underage people [to] gamble," but as Defendants acknowledge in the same breath (*id.*), Kalshi users must be 18 or older—*adults*, in other words.  These measures may not be identical to those required of sportsbooks under Nevada law, but Defendants fail to explain with any specificity why they are inadequate.

13

## CONCLUSION

The Court should grant an immediate administrative stay pending resolution of Kalshi's stay motion. **This relief is needed by February 16, 2026.** Alternatively, the Court should grant Kalshi's stay motion outright.

Date: February 13, 2026

Respectfully submitted,

/s/ Neal Kumar Katyal

GRANT R. MAINLAND
ANDREW L. PORTER
DAVIS CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

DENNIS L. KENNEDY
PAUL C. WILLIAMS
BAILEY ❖ KENNEDY
8984 Spanish Ridge Ave.
Las Vegas, NV 89148

NEAL KUMAR KATYAL
JOSHUA B. STERLING
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7505
nkatyal@milbank.com

*Counsel for Plaintiff-Appellant
KalshiEX, LLC*

14

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 2,800 words, excluding the parts of the reply exempted by Federal Rule of Appellate Procedure 27(a)(2)(B) and 32(f). This reply also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Georgia font 14-point type face.

Date: February 13, 2026

/s/ Neal Kumar Katyal
Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I hereby certify that, on February 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

Date: February 13, 2026          /s/ Neal Kumar Katyal
                                 Neal Kumar Katyal