

AARON D. FORD
*Attorney General*

CRAIG A. NEWBY
*First Assistant Attorney General*

CHRISTINE JONES BRADY
*Second Assistant Attorney General*

TERESA BENITEZ-THOMPSON
*Chief of Staff*

LESLIE NINO PIRO
*General Counsel*

HEIDI PARRY STERN
*Solicitor General*

STATE OF NEVADA

OFFICE OF THE ATTORNEY GENERAL

1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119

March 2, 2026

Via ECF

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

**Re:** *KalshiEX, LLC v. Hendrick,* 9th Cir. No. 25-7516

Dear Ms. Dwyer:

I write in response to Kalshi's letter regarding the preliminary-injunction decision in *KalshiEX LLC v. Orgel*, 3:26-cv-34 (M.D. Tenn. Feb. 19, 2026), which held that Kalshi's sports contracts likely are "swaps" under the CEA and that Kalshi was likely to succeed in showing that the CEA conflict preempts Tennessee gaming law. *Orgel* is an out-of-circuit district-court decision and its reasoning is unpersuasive.

First, *Orgel*'s interpretation of "swap" is inconsistent with statutory text and context. The court concluded that a contract based on any event with a conceivable financial consequence is a swap under 7 U.S.C. § 1a(47)(A)(ii). Op. 17. As the district court below explained, if those attenuated consequences sufficed, there would be no limit to this definition of swap, rendering the rest of the definition of "swap" superfluous. 1-ER-13-14; *see* Dkt. 33.1 (Br.), at 30-32. The consequences would be extraordinary: All sports bets would be "swaps," and because consumer swaps must be traded on CFTC-registered markets, 7 U.S.C. § 2(e), the CFTC would become the Nation's sole gambling regulator, ousting the States, 1-ER-21. *Orgel* did not address these consequences.

Second, *Orgel*'s preemption analysis is incorrect. The court failed to apply the presumption against preemption of traditional areas of state regulation, such as gambling. Br. 20. Further, it relied solely on conflict preemption, reasoning that geographic restrictions on Kalshi's platform would violate the CFTC's "impartial access" principle. Op. 19. Even if true (and it is not, Br. 56), conflict preemption extends only "to the extent" of the conflict—it does

Molly Dwyer, Clerk of Court
Page 2
March 2, 2026

not displace *all* state regulation, *Pac. Gas & Elec. Co v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983).

*Orgel*'s obstacle-preemption reasoning fares no better. The court held that state law obstructs "uniform" regulation of the derivatives market, Op. 20, but uniformity is a field-preemption concern, and the court did not find that the CEA preempts the field of state gaming regulation. Conflict preemption permits nonuniform state regulation, so long as it does not conflict with a specific federal objective, and here there is no federal objective of allowing sports wagering on DCMs. Br. 57-58.

                        Respectfully,

                        */s/ Jessica E. Whelan*
                        Jessica E. Whalen
                        Chief Deputy Solicitor General – Litigation
                        (702) 486-3420
                        jwhelan@ag.nv.gov