

# Milbank

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W. | Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com | milbank.com

March 19, 2026

**By Electronic Filing**

Molly Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103

> Re: *KalshiEX LLC v. Assad, et al.*, No. 25-7516
> FRAP 28(j) Letter Response

Dear Ms. Dwyer:

*Schuler* and *Nessel* do not support affirmance. Both interpret "swap" to require an event with an "inherent" connection to financial consequences. *Schuler*, Op. 11; *Nessel*, Op. 6. That contradicts the CEA, which refers to "*potential*" financial consequences. 7 U.S.C. § 1a(47)(A)(ii). *Schuler* further posits that qualifying events must "traditionally and directly *affect commodity prices*." Op. 11-12. But the definition does not reference commodity prices. Regardless, a commodity includes an "occurrence" or "contingency." 7 U.S.C. § 1a(19)(iv).

The extratextual limits adopted in both cases contravene Congress's clear intent to define "swap" broadly. *See id.* § 1a(47)(A)(iv) (separately defining "swap" to include any agreement "commonly known to the trade as a swap"). Congress enumerated exclusions from the definition, *id.* § 1a(47)(B), and authorized the CFTC and SEC to "further define" "swap" by regulation, 15 U.S.C. § 8302(d)(1), underscoring that it did not want courts to add more limitations. And Congress specifically contemplated "event contract[s]" involving "gaming," and gave the CFTC discretion to prohibit them. 7 U.S.C. § 7a-2(c)(5)(C)(i). But Congress did not define "swap" to exclude them. Nor is a limiting construction needed to avoid forcing "all sports bets" onto DCMs. *Schuler*, Op. 12. The CFTC has recognized non-tradable transactions like sports bets are not derivatives subject to the DCM-trading requirement. 77 Fed. Reg. 48,208, 48,212-13 (Aug. 13, 2012).

*Schuler* also rejected field preemption, but it implicitly recognized the CEA's "preemptive effect" applies to Kalshi's contracts if they are "swaps [or] futures traded on DCMs." Op. 17. As to conflict preemption, *Schuler* rejected as "*ipse dixit*" Kalshi's argument that complying with

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

state-by-state geographic restrictions would violate Kalshi's "impartial access" obligation. Op. 20; 17 C.F.R. § 38.151(b). But the CFTC itself has expressly endorsed Kalshi's view. CFTC Br. 27. And *Schuler*'s one-paragraph equities analysis rested on its conclusion that Ohio law was not preempted. Op. 21. But that conclusion was mistaken, and "preventing a violation of the Supremacy Clause serves the public interest." *United States v. California*, 921 F.3d 865, 894 (9th Cir. 2019).

Finally, *Nessel* was an *ex parte* TRO decision, not a preliminary injunction decision. The court accordingly recognized that "further argument and investigation" was warranted. Op. 7. *Nessel*'s preliminary conclusions merit minimal weight.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*

cc:     All Counsel (via ACMS)
        Word Count: 346