

May 1, 2026

<u>**Via ACMS**</u>

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94119-3939

> **Re:** ***North American Derivatives Exchange, Inc. v. State of Nevada***, **No. 25-7187;** ***KalshiEX, LLC v. Assad***, **No. 25-7516;** ***Robinhood Derivatives, LLC v. Dreitzer***, **No. 25-7831 (argued and submitted on April 16, 2026—Judges R. Nelson, Bade, and Lee)**

Dear Ms. Dwyer:

Defendant-Appellee State of Nevada informed this Court of the Sixth Circuit's decision in *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. Apr. 24, 2026) ("Op."), which correctly rejected Kalshi's request for an injunction pending appeal. Intervenor-Defendant-Appellee Nevada Resort Association submits this response to emphasize three additional points from *Schuler* that support affirmance.

First, although *Schuler* acknowledged the presumption against preemption, Op.11, it rejected Kalshi's express and field preemption arguments based solely on the text and structure of the Commodity Exchange Act ("CEA"). Regarding express preemption, the court explained that the CEA's "exclusive jurisdiction" language "would represent an unusual express-preemption provision" because other CEA provisions expressly "supersede and preempt" state gaming laws in circumstances inapplicable here. Op.7-9 (quoting 7 U.S.C. § 16(e)(2)). Regarding field preemption, the court noted the CEA's multiple "savings clauses" and observed that their "presence … usually signals that Congress does not mean to preempt the *field*." Op.10.

Second, *Schuler* recognized that the CEA's "Special Rule" undermines Kalshi's conflict preemption arguments. That provision authorizes the CFTC to prohibit contracts that "involve" "gaming" or "activity that is unlawful under any Federal or State law." 7 U.S.C. § 7a-2(c)(5)(C)(i). The Special Rule "suggests that certain contracts may be listed in some state markets but not others," undercutting Kalshi's contention that federal law requires uniform geographic access to contracts listed on DCMs. Op.13. Thus, even apart from the regulation categorically prohibiting contracts that involve gaming or unlawful activity, 17 C.F.R. § 40.11(a)(1), the statutory Special Rule itself confirms that the CEA does not impliedly preempt state law.

mcdonaldcarano.com

100 West Liberty Street • Tenth Floor • Reno, Nevada 90501 • **P**: 775.788.2000
2300 West Sahara Avenue • Suite 1200 • Las Vegas, Nevada 89102 • **P**: 702.873.4100

𝕞 MERITAS®
LAW FIRMS WORLDWIDE



Finally, *Schuler* correctly held that the equities and public interest favored the State. Op.15.  The court reiterated that a State suffers irreparable harm when enjoined from enforcing "statutes enacted by representatives of its people," and found that principle especially weighty given Ohio's regulation of gambling under its "longstanding police powers."  Op.14.  *Schuler* further explained that an injunction would "preclude Ohio from 'enforc[ing] the will' of its legislature" and "impede" efforts to protect the public, including "young people."  Op.15.  Those conclusions apply with equal force to Nevada.  *See* NRA *Crypto.com* Br. 71-74.

Respectfully submitted,

*/s/ Adam Hosmer-Henner*

Adam Hosmer-Henner

*Counsel for Intervenor-Defendant-Appellee Nevada Resort Association*

cc:    Counsel of Record (via ACMS)