

| | **AARON D. FORD** | |
|---|---|---|
| CRAIG A. NEWBY | *Attorney General* | LESLIE NINO PIRO |
| *First Assistant Attorney General* | | *General Counsel* |
| CHRISTINE JONES BRADY | | HEIDI PARRY STERN |
| *Assistant Attorney General* | | *Solicitor General* |

### STATE OF NEVADA

### OFFICE OF THE ATTORNEY GENERAL

1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119

May 11, 2026

Via ECF

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

> Re: *KalshiEX, LLC v. Assad*, 9th Cir. No. 25-7516
> *N. Am. Derivatives Exch. Inc. v. Nevada*, No. 25-7187
> *Robinhood Derivatives, LLC v. Dreitzer*, No. 25-7831

Dear Ms. Dwyer:

I write regarding *KalshiEX, LLC v. Johnson*, No. 2:26-cv-1715 (D. Ariz. May 5, 2026). The court's approach should not be followed for several reasons.

First, the court erred in determining that Kalshi's sports-related contracts likely are "swaps" under the CEA. The court adopted a "broad reading" of "swap," reasoning that the CFTC can "further define" the term if that reading proves problematic. Op. 9 (quoting 15 U.S.C. § 8302(d)). But determining a statute's mean-

Molly Dwyer, Clerk of Court
Page 2
May 11, 2026

ing is exactly the court's role, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-95 (2024), and the court should not interpret the statute's terms "in isolation" or give them their "broadest imaginable" meaning, *Dubin v. United States*, 599 U.S. 110, 120 (2023); *see* No. 25-7187 State Defs. Response Br. (Br.) 22-30. And adopting Kalshi's unbounded definition of "swaps" would be deeply problematic: *All* sports bets would be "swaps," to be regulated *only* by the CFTC. 7 U.S.C. § 2(e); Br. 37-41.

Second, the court erred in deciding that the CEA likely preempts the field of gaming law. The court failed to apply the presumption against preemption, Op. 12, even though gaming is a traditional area of state regulation, *Murphy v. NCAA*, 584 U.S. 453, 484 (2018). The court relied (Op. 12-13) on the "Special Rule," 7 U.S.C. § 7a-2(c)(5)(C)(i)-(iv), but that provision says nothing about preempting state gaming law; instead, it is a safety-valve provision allowing the CFTC to delist contracts that are against the public interest. Br. 33, 49-50. The court acknowledged (Op. 13) that 17 C.F.R. § 40.11 prohibits gaming-related

Molly Dwyer, Clerk of Court
Page 3
May 11, 2026

contracts on DCMs but concluded that the regulation does not bear on the preemption question. That is incorrect because the regulation affirmatively preserves state authority. Br. 33.

Third, the court erred in its conflict-preemption analysis. The CEA does not create a unified "national[] market" for sports betting, Op. 14, so enforcement of state gaming laws does not conflict with its text or goals, Br. 55-57. Those laws also do not conflict with the CFTC's "impartial access" requirement, 17 C.F.R. § 38.151(b); that requirement does not require DCMs to offer identical products in every State.

Respectfully,

/s/ Jessica E. Whelan
Jessica E. Whelan
Chief Deputy Solicitor General—
Litigation
(702) 486-3420
jwhelan@ag.nv.gov