

# Milbank

**WILL HAVEMANN**

*Partner*

1101 New York Ave., N.W. | Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com | milbank.com

June 10, 2026

**By Electronic Filing**

Molly Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103

>       **Re:**   ***KalshiEX LLC v. Assad, et al.*, No. 25-7516**
>           **FRAP 28(j) Letter**

Dear Ms. Dwyer:

Kalshi respectfully advises the Court that the CFTC has published a Notice of Proposed Rulemaking ("NPRM")[1] to amend 17 C.F.R. §40.11. The NPRM strongly supports Kalshi.

*First*, the NPRM confirms the CEA "granted the CFTC exclusive jurisdiction" to create "a comprehensive federal regulatory framework that expressly preempts state laws." NPRM 11. "Preemption of state law was necessary because, for decades, states had attempted to apply state gambling laws to derivatives trading." NPRM 11n.24.

*Second*, the NPRM confirms that Kalshi's event contracts are derivatives under CFTC jurisdiction. It refutes Defendants' contention that sports-event contracts involving "outcomes" are not subject to CFTC jurisdiction. NPRM 6n.1. (contracts "based on the outcome of an underlying occurrence or event" are quintessential derivatives contracts). It further refutes Defendants' contention that sports events categorically lack potential economic consequences. NPRM 8 ("sporting events" "generate billions of dollars in economic activity and materially affect both regional and national markets").

*Third*, the NPRM defines "gaming" in the Special Rule to include sports-event contracts; makes clear that such contracts are *not* categorically prohibited; and provides for public-interest review of sports-event contracts. NPRM 26-28,77-78. It explains that the CFTC "aims to permit contracts settled on aggregate sports outcomes with objective data and integrity infrastructure" and

---

[1] *Available at* https://www.cftc.gov/media/14151/NPRM_PredictionMarkets060926/download.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

notes that many sports-event contracts "can be operated consistent with the public interest." NPRM 118,184.

*Fourth*, while Defendants contend that the current version of §40.11 "categorically *ban[s]*" contracts involving " 'gaming' on DCMs," Br.50, the NPRM explains the CFTC "has consistently applied § 40.11 to operate a discretionary review framework rather than a self-executing *per se* prohibition, because the opposite interpretation would violate the statute." NPRM 36.

*Fifth*, the NPRM confirms that "elections and awards are contests, not gaming." NPRM 161. This underscores the conflict with Nevada law, because Nevada regulators are now subjecting Kalshi to liability in state court for offering all three kinds of contracts.

The statutory text expressly preempts Nevada's efforts to regulate Kalshi. To the extent the Court credits Defendants' §40.11 arguments, however, Kalshi respectfully suggests the Court defer its decision until the final rule is issued.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*


cc:     All Counsel (via ACMS)
        Word Count: 346