

# Milbank

**WILL HAVEMANN**
*Partner*

1101 New York Ave., N.W.  |  Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com  |  milbank.com

June 25, 2026

**By Electronic Filing**

Molly Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103

> **Re:** ***KalshiEX LLC v. Assad, et al.***, No. 25-7516
> **FRAP 28(j) Letter Response**

Dear Ms. Dwyer:

Neither of the orders Defendants identify—*Robinhood Derivatives, LLC v. Nessel*, No. 1:26-cv-730, ECF No. 39 ("*Robinhood* Order"), and *QCX, LLC v. Nessel*, No. 1:26-cv-710, ECF No. 41 ("*QCX* Order")—supports affirmance.

*First*, the Michigan court erred in holding that Kalshi's contracts are not swaps. The court declined to follow the plain-language definition of "swap" on the mistaken belief that this definition is limitless. But Kalshi does not contend *any* event can underlie a swap; an event must be connected to possible financial consequences, subject to ordinary causation principles. Outcomes of sports events carry potential financial consequences for various stakeholders. Opening Br. 45-46. And "consumer and commercial transactions" that "are not traded on an organized market or over-the-counter" also are not swaps. *Further Definition of "Swap,"* 77 Fed. Reg. 48,208, 48,247 (Aug. 13, 2012). That tradability requirement—ignored by the Michigan court—supplies an independent limiting principle that explains why "service contracts," "mortgages," and "prenuptial agreements" are not swaps.

*Second*, the Michigan court wrongly rejected preemption. Contrary to the text, it relied on certain CEA provisions to conclude the CFTC's exclusive jurisdiction "is not actually so exclusive." *Robinhood* Order 27; *QCX* Order 27. But those provisions preserve state authority only outside the preempted field—none lets states "directly affect trading on or the operation of a futures market." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156-57 (7th Cir. 1992). As to impossibility, the court noted a DCM can adopt "fee structures" that treat a category of market participants differently if "reasonably related to the cost of providing access …

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

to a particular category." *QCX* Order 28.  But charging fees based on "information technology or administrative expenses" is not remotely akin to banning users based on geography, which is what Nevada seeks to force Kalshi to do.  *See Core Principles*, 75 Fed. Reg. 80,572, 80,579 (Dec. 22, 2010).

*Third*, the Michigan court's equities analysis was based on its determination that "the application of Michigan law against [Kalshi] would [not] be unconstitutional" and therefore cannot independently support affirmance here.  *See Robinhood* Order 32-33; *QCX* Order 32-33.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*

cc:     All Counsel (via ACMS)
        Word Count: 350