CRAIG A. NEWBY
*First Assistant Attorney General*

CHRISTINE JONES BRADY
*Assistant Attorney General*

**AARON D. FORD**
*Attorney General*

LESLIE NINO PIRO
*General Counsel*

HEIDI PARRY STERN
*Solicitor General*

STATE OF NEVADA

OFFICE OF THE ATTORNEY GENERAL

1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119

August 20, 2026

Via ECF

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re: *N. Am. Derivatives Exch. Inc. v. Nevada*, 9th Cir. No. 25-7187
*KalshiEX, LLC v. Assad*, 9th Cir. No. 25-7516
*Robinhood Derivatives, LLC v. Dreitzer*, 9th Cir. No. 25-7831

Dear Ms. Dwyer:

I write in response to KalshiEX, LLC's (Kalshi's) August 11, 2026, letter regarding North Carolina Senate Bill 257 (S.B. 257). S.B. 257 imposes a 6% tax on fees earned by prediction markets in North Carolina. The law confirms the central holding of the court below—that States have the authority to regulate Appellants' sports-, election-, and entertainment-related event contracts.

Kalshi's embrace of S.B. 257 undermines its arguments at every turn. On field preemption, Kalshi argued that the CEA creates a "regime [that] leaves no room for the States to supplement it." Opening Br. 35 (internal quotation marks omitted). Yet S.B. 257 *acts directly in* the very field Kalshi claims is preempted—on-DCM transactions. Kalshi attempts to draw a distinction between regulating its contracts and taxing its

Telephone: 702-486-3420 • Fax: 702-486-3768 • Web: ag.nv.gov • E-mail: aginfo@ag.nv.gov
Twitter: @NevadaAG • Facebook: /NVAttorneyGeneral • YouTube: /NevadaAG

revenues from those contracts, *see* Ltr. 2, but that is purely a formalism—both are forms of regulation by the State.

On conflict preemption, Kalshi argued that the application of Nevada's gaming laws would frustrate a supposed federal policy of uniform regulation of derivative markets. Opening Br. 36-37. Yet S.B. 257 imposes exactly that type of State-specific regulation, by requiring Kalshi to identify its gaming activity attributable to North Carolina and pay taxes on that activity. S.B. 257 § 44.9(a). By embracing S.B. 257, Kalshi is admitting that a State has the power to regulate its operations in the State—a stunning about-face, which would mean that (at a minimum) Kalshi cannot evade Nevada's taxing provisions. *See* NRS § 463.370.

Kalshi notes (Ltr. 1) that S.B. 257 purports to recognize the CFTC's "exclusive federal regulatory authority" over sporting event contracts offered by CFTC-registered DCMs. S.B. 257 § 44.9(a). The North Carolina legislature's view of the meaning of a federal statute is not binding on this Court, and the legislature's statement is facially suspect in light of the fact it plainly believes there is room for States to act in regulating prediction markets.

Respectfully,

*/s/ Abigail L. Pace*

Abigail L. Pace
Senior Deputy Attorney General
(702) 486-3420
apace@ag.nv.gov